Good morning, your honors, and may it please the court. My name is Eric DiIulio, and I'm appearing on behalf of plaintiff and appellant Kelly Wilson. I'd like to try to reserve three minutes of my time for rebuttal, and I'll keep track on the clock. Mr. Wilson served his country honorably in Vietnam. When he was awarded disability benefits in connection with his service, defendants returned his checks to the VA without providing him any notice at all in violation of his due process rights. When Mr. Wilson attempted to use the grievance process to challenge the fundamental unfairness of these actions, he found himself in a classic catch-22 situation. On the one hand, the defendants said they were required by the applicable regulations to return the checks to the VA. On the other hand, they said that there was no remedy they could give him within the applicable regulation process. In fact, defendants told Mr. Wilson that they were powerless to grant him any relief not once, not twice, but three times as Mr. Wilson worked his way through the appeals process. At the third level, the decision could have simply canceled for lack of jurisdiction, but it didn't do that. Instead, it blessed the first two opinions and offered an identical justification for the end result. And when that happened, the substantive and the procedural issues merged, and Mr. Wilson had exhausted his administrative remedies. What's your best authority for that last statement you just made? Reyes, Your Honor. Let's talk about that. Tell me why you think Reyes supports that. Certainly. So in Reyes, what the Court found was that where you've issued a decision on the merits, and you don't, the Court did not enforce the procedural bar in the process, that they can't rely on that at a later date. And essentially here what happened is the third, so we acknowledge that Reyes is not directly on point because there's a small step to get from Reyes to where this case is, because the third level decision talked about both the merits and the procedure. And so if you look through the decision, first it says, you know, Mr. Wilson was appropriately instructed at the prior two levels to go to the VA. It doesn't say that the first two opinions, you know, should have canceled for lack of jurisdiction. And so it's not a big jump from Reyes where there was no enforcement of the procedural bar to get to here, where they said, look, the actual justification of the jurisdiction, whether you call it a denial of Mr. Wilson's appeal or whether you call it a cancellation, in effect, because the justification was the same, there's nothing we can do. You have to go to the VA. That Mr. Wilson has exhausted his administrative remedies. And to the extent, Your Honor, suggesting that there were further administrative remedies available or there were additional steps that Mr. Wilson should have taken, the Court should not fault Wilson for failing to take an empty procedural step of essentially asking the third level officer who issued the decision to reconsider the opinion he had just given. Mr. Wilson received, you know, three essentially identical decisions as he worked his way through the process. And by the time he got the third, it was clear that he was at a dead end. And as the Court is aware under Ross, a dead end is where any further procedural remedies are available in theory but not in practice. And here, Mr. Wilson had been told three times that there was nothing that the ---- Sotomayor, when it said cancellation on there, he had looked at the procedures and the manual or the regulations there that the prison puts out. He would have found that he needed to appeal that. And he didn't look. And so I'm just trying to figure out why we would then say that's a merits decision and he wouldn't have exhausted his remedies. I think, I mean, I know you're arguing Ross v. Blake and trying to make that fit, but it seems like from my view of the record here that Wilson, you know, probably is trying to more likely argue that he made a mistake or trying to figure out because he made a mistake in not appealing that and trying to make this fit into the Ross v. Blake exception. But Blake doesn't permit a reasonable mistake, as you know. And so trying to figure out how he gets around the non-exhaustion. Yeah. I think the answer to that is the dead end piece, because there has to be something that defendants could have given him through the appeals process. And here, there's no evidence in the record that there was any relief available to Wilson, even if he had appealed the cancellation decision and gotten the same guy who issued the decision to change his mind and overturn all three of the prior decisions, saying there's nothing we can do, you have to go to the VA. Yeah, but there was something. I mean, he could have appealed his cancellation, the cancellation decision, and he didn't. That's correct, Your Honor. And that goes to the substantive exhaustion. In the situation where we're talking about a dead end, the idea is that's an exception to the exhaustion requirement. So even if Mr. Wilson, if the Court should find that Mr. Wilson didn't exhaust, it can still reverse the district court because Mr. Wilson was at a dead end. And there's no evidence in the record and no authority to support the defendant's position that there was any relief available to Mr. Wilson. Did Wilson have access to the CDCR regulations? He did, Your Honor. And there's evidence in the record of his appellate history. The government makes much of his purported experience with the appeals process in terms of saying that he should have known that he had to appeal. But if you look in the record at his actual, there's a log of all his prior appeals, and that's at ER 53. You can see that he'd never had an appeal canceled before. And so the standard here is a typical inmate, a reasonable inmate. And so someone who goes through this process and says, first level, go to the VA, second level, go to the VA, third level, go to the VA, but it's canceled instead of denied, I think that's an awfully fine distinction to ask an inmate to make. And there's also evidence in the record in Mr. Sack's declaration that suggests that the CDCR's typical practice in those situations is to inform inmates that there are additional procedural steps that need to be taken in order to exhaust, and that didn't happen here. And I'd like to reserve the rest of my time for rebuttal, please. Mr. Wilson. Good morning. May it please the Court. Chad Stegman on behalf of the defendants' appellees, the prison officials. Wilson did not exhaust remedies under the Prison Litigation Reform Act based on two independent reasons. First, he filed this lawsuit before he even received a decision at the second level of probable grievance, before he even received his cancellation decision. By the time he received the cancellation decision, the docket below will reflect 11 entries. There had been a lot of activity in this case. So this case is very much on point with McKinney v. Carey. You can't exhaust your remedies during the course of the litigation. The second independent justification for a failure to exhaust here is that he did not appeal the cancellation decision at the third level, and he was obligated to. To expand on the first point, Wilson's file-now, exhaust-later approach to the litigation is contrary to the PLRA's text, as well as McKinney v. Carey, Andres v. Marshall, Ladin v. Summerhill, and various other cases. Even Albino v. Baca requires someone to exhaust before you file the litigation. The PLRA itself says a prisoner may not bring a Federal suit about prison conditions unless he first exhausts all available administrative remedies. This case should be dismissed on this basis alone. Why wasn't he at a dead end, if you can counter the argument, pursuant to Ross v. Blake? He wasn't at a dead end because he asked for numerous items of relief. For instance, he made a staff complaint in his third-level appeal, as well as his second-level appeal. They were not exhausted. There's nothing in the cancellation decision that talks about a staff complaint. He asked for information and documentation from CDCR that could have been provided that was within the jurisdiction of CDCR. So he could have obtained this relief. With regard to the VA payment issue, there's a suggestion by the Supreme Court of an And the Supreme Court in Blake says, Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office, but in practice that office disclaims the capacity to consider those petitions. Now, I recognize that that's intended for a slightly different situation, but don't we here have a situation where the office has disclaimed the ability to resolve this matter with the idea that it has to be taken to the VA? That is only one aspect of his appeal. And he was directed to go to the VA. He did go to the VA. He did get his benefits eventually. You can't expect CDCR to provide relief that is only within the VA's provenance. However, you can expect CDCR to address a staff complaint for one of its own employees. You can ask CDCR for information as well as documentation that you explicitly asked for in your third-level and second-level complaints.  And this was also not a situation where the regulations were opaque. The plaintiff appellant had access to the law library. He appended copies of Title 15 to his complaint that he filed three months before he even received the cancellation decision. He had access and he was directed to the specific regulation that provides for the cancellation appeal in the cancellation letter. He could have gone and looked up the regulation and he would have known what he needed to do. Did Mr. Wilson ever end up getting his money? Did he receive his money? Yes, he did. Okay. And he's still receiving it today. So what's left in this lawsuit in terms of damages from the time that he didn't have it? I'm trying to figure out what's... Well, he did receive the back pay as well. So he's received all of his benefits. There could be, and this is speculation, I don't believe there's anything left in the case, but there could be a due process claim. Okay. And did the prison make any changes in its policy or the CDR change any of the regulations? You all changed the CDR in terms of changing any regulations as a result of this lawsuit? Ultimately, they did. It's not in the record, but the local operating procedures were changed. And that came out in the course of depositions. But that related to, it was a result of the litigation. It had nothing to do with this exhaustion process. And now the policy is you don't hold on to those, you don't send those checks back. Just to describe that policy, and this is regulation under Title 15-3140B, any government benefits that come in for an inmate, prison officials will go and make sure they're entitled to it, that they didn't receive them through fraud or otherwise. So they check with here the VA or the IRS if it's a tax refund,  Here the VA said, you better return those. He's a prisoner. You should return these benefits so we can make sure that we're doing this right. And eventually they responded, gave him his benefits. He receives them monthly. Now I'll just conclude, unless you have any further questions. You should dismiss this case because he filed suit before he even reached the second-level decision. So when did he file suit? Can you give me the dates on that, when he filed suit and when the? Okay. He signed his complaint February 9th, 2014. That is under the supplemental excerpts of record 59 through 62. He received a decision on the second-level grievance March 12th, a month later of 2014. That is at excerpts of record 63 through 64. He received the cancellation decision May 12th, 2014, three months after he filed suit. So you don't even have to get to the cancellation issue. He just filed suit before he exhausted, and that's as far as you need go. And just to address the additional remedies that were available to him, he did have an opportunity to appeal the cancellation. He was in no way foreclosed from exhausting his claim. The cancellation decision directed him to the regulation addressing cancellations and appeals of cancellation decisions. He had access to the regulations. And he had considerable experience with the appeal process. So there was neither a dead end under Ross, nor was the appeal procedure opaque, because while he says it was unknown to him that he could appeal, if you look at Ross v. Blake, the court was concerned about what is unknowable. So unknown will not get you there. With that, I will take a seat. Thank you very much for your time. I want to first address the dead end point that Mr. Stegman made. And he said that you can't expect the CDCR to address relief that's within the VA's jurisdiction. And I think that right there closes up the dead end issue. According to defendants, their hands are tied, and there's nothing they can do by the applicable regulations to grant Mr. Wilson any relief. So there's no relief that's available. And I think that really ends the inquiry right there. Counsel, I was going to ask, how do you square your position with the PLRA language? Yes. So the PLRA only requires you to exhaust such administrative remedies as are available. And as Mr. Stegman pointed out, the CDCR could not afford or could not provide Mr. Wilson any remedies, regardless of whether he took this further empty procedural step of appealing a cancellation decision. There's nothing that they could have done for him in that instance, so he was at a dead end, because those remedies are not available. And there's no evidence in the record to support that there's anything Mr. Wilson could have done or anything that the defendants could have done for Mr. Wilson. To address the filed before exhaustion claim, this Court recently issued an opinion. At Jackson, we also cited a case called Canoe. It's the operative complaint that's the yardstick or the touchstone for considering whether exhaustion happened. And here, Mr. Wilson exhausted administrative remedies, as Mr. Stegman said, in 2014. And the second amended complaint, which is the operative one before the Court, was not filed until 2015. So there's no substantive exhaustion issue there. And further, this issue was not raised or passed on below, so it's not properly before this Court. To address Your Honor's concern about what is left in the lawsuit, Mr. Wilson is seeking damages from deprivation of his benefits, and he's also challenging the constitutionality of this regulation. The regulation is still in the books. It hasn't been changed. So it would still allow defendants to sort of engage in the same conduct of checking in with the VA and just returning a check before it's sent back to defendants. And finally, to get to the opaqueness point, as I have just a few seconds left, there's no – so even though Mr. Wilson could have read through the regulations, again, I just wanted to reiterate that. The standard here is a typical inmate standard, and Mr. Wilson, he's not a trained lawyer, so he shouldn't be expected to sort of parse these finely worded statutes and figure out what to do. Thank you, Your Honors. Thank you. All right. Mr. Deluglio, Mr. Stegman, thank you for your presentations here today, arguments. The matter of the case of Wilson v. Eviate is submitted. Thank you.
judges: Gould, Murguia, Gritzner